UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM CRUMP, JR.,

       Plaintiff,

v.                                    Case No. 2:06-cv-266
                                          HON. ROBERT HOLMES BELL

THOMAS PERTTU, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff William Crump, Jr., an inmate currently confined at the Alger Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC).  Specifically, Defendants include Assistant Resident Unit Supervisor Thomas Perttu, Resident Unit Manager Terry Smith, Assistant Deputy Warden Dan Lesatz, Warden Greg McQuiggin, Prison Guard Keith Erkkila, Prison Guard Steve Holma, Prison Guard James Dingeldey, Prison Guard Dean Huhta, Prison Guard John Perry, Prison Guard John VanAbel, Prison Guard Jon Martti and Prison Guard Randy McClellan.

Plaintiff's complaint alleges that Defendants Erkkila, Holma, Dingeldey, Perry, VanAbel, Martti, and McClellan harassed him in various ways and issued retaliatory false misconducts on him.  Plaintiff states that prior to September 21, 2006, he never refused to shower or accept his food trays, nor did he bang on his footlocker or door.  Plaintiff states that staff are falsely claiming that he engaged in this behavior.  Plaintiff asserts that Defendants conspired to retaliate against him when they placed him in cell 3-112, which had blood, feces, urine, and other

bodily fluids on the walls, ceiling and floors.  Plaintiff states that he was denied cleaning supplies for a month.  Plaintiff also alleges that on several occasions staff encouraged other prisoners to disturb Plaintiff by banging on walls and furniture and causing floods.

Plaintiff claims that Defendants' actions violated his rights under the First and Eighth Amendments to the United States Constitution.  Plaintiff is seeking compensatory and punitive damages, as well as declaratory and injunctive relief and costs.  Presently before the Court are the Defendants' Motions for Summary Judgment (docket #21 and #75) filed pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed responses and the matter is ready for decision.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close***, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir.

1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The undersigned notes that Defendants filed a motion contending that Plaintiff failed to properly exhaust his administrative remedies on September 4, 2007 (docket #75). Defendants claim that Defendants Erkkila, Holma, Dingeldey, Perry, VanAbel, Martti and McClellan are entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies against these Defendants. A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d

- 3 -

ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for

---

[1]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

completing grievance forms: "The issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III.  *Id.* at ¶S.  In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Plaintiff in this case pleaded exhaustion of administrative remedies in his complaint. He also attached numerous grievance documents to his complaint. Defendants submit additional grievance documents in an attempt to show that Plaintiff failed to adequately exhaust his administrative remedies against Defendants Erkkila, Holma, Dingeldey, Perry, VanAbel, Martti, and McClellan.

In his complaint, Plaintiff claims that he filed grievance AMF 06-08-2496-28a on July 24, 2006, against Defendants Smith and Perttu. Plaintiff states that following this date, Defendant Holma harassed him by denying him showers and searching his cell and leaving it in disarray. Defendants claim that grievance AMF 06-08-2496-28a was rejected as being duplicative of AMF 06-03-981-17a, which was filed on March 16, 2006, against Defendant Perttu and concerned Plaintiff's release from segregation. Defendants further state that neither grievance AMF 06-08-2496-28a nor AMF 06-03-981-17a concern the claim against Defendant Holma.

On August 15, 2006, Defendant Holma gave Plaintiff an administrative segregation behavior review form that Plaintiff claims contained old misconduct information. On August 16, 2006, Plaintiff filed a grievance seeking a correction of this report. This matter was addressed in AMF 06-08-2747-08a, which does not name Defendant Holma. In addition, Defendants note that the step I response indicates that the grieved matter was resolved, so that there is no violation of Plaintiff's rights.

Plaintiff claims that on August 21, 2006, Defendant Holma filed a false misconduct report charging Plaintiff with threatening behavior. This report was dismissed on September 12, 2006. Defendants assert that Plaintiff did not subsequently file any grievance claiming that this misconduct was false or retaliatory. On August 21, 2006, Plaintiff filed a grievance directly to step III, charging staff corruption by Defendants Erkkila, Dingeldey, Perry, Holma, Martti, VanAbel and

others, claiming that they deprived him of yard, showers, legal mail processing, and legal supplies. In addition, Plaintiff claims that they threatened him to discourage him from filing any more grievances. Defendants state that this grievance was returned to Plaintiff with instructions for him to file it at step I. Plaintiff complied and filed it as grievance AMF 06-09-2956-17b, which names Defendants Smith, Perttu, McQuiggin, Lesatz, Holma, and other officers not named as defendants in this case. The grievance states, "staff has retaliated every time [Plaintiff] filed a grievance" and that on August 21, 2006, "Holma filed a threatening behavior on [Plaintiff]." Therefore, the undersigned concludes that Plaintiff did adequately exhaust his administrative remedies against Defendant Holma regarding the allegedly retaliatory August 21, 2006, misconduct ticket. Moreover, because Plaintiff was not found guilty of this ticket, his claim is not barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).

Plaintiff claims that on August 24, 2006, Defendant Holma announced on the wing that Plaintiff was a jailhouse lawyer and that he had been in segregation for ten years, and that if Plaintiff would just stop filing grievances, he would get out of segregation. Plaintiff claims that he filed a grievance on this issue, AMF 06-08-2883-17A. Plaintiff contends that on September 1, 2006, Defendant Dingeldey denied Plaintiff yard, saying "If you piss one of us off you piss all of us off." However, Defendants assert that these grievances were never appealed to step III and offer a copy of the "grievance inquiry" on Plaintiff's grievance history in support of this claim. According to the grievance inquiry, there is no evidence of a grievance appealed to step III for any incidents on August 24, 2006, or September 1, 2006. (*See* Defendant's Exhibit 2 to the September 4, 2007, motion for summary judgment.) Therefore, it does not appear that Plaintiff exhausted his remedies with regard to these claims.

Plaintiff alleges that on September 15, 2006, Defendant Holma threatened to stop getting legal books for Plaintiff and that since that date, Plaintiff's requests for books have disappeared, except for one or two that slipped through. Plaintiff filed a grievance regarding this, AMF 06-09-3146-17a, which was investigated and found to be unfounded. Defendants state that the step II response to this grievance was returned to Plaintiff on November 9, 2006, and Plaintiff filed his complaint on October 23, 2006, prior to the exhaustion of his administrative remedies on this claim. (*See* Plaintiff's Exhibit 18 to his complaint.) The Sixth Circuit has squarely held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The administrative process must be complete before the prisoner files an action in federal court. *Id.* Therefore, it does not appear that Plaintiff exhausted his administrative remedies with regard to these claims.

Plaintiff alleges that on September 19, 2006, Defendant Erkkila told him that he was tired of taking care of Plaintiff's laundry, which is required by Plaintiff's medical detail. On September 20, 2006, Defendant Erkkila returned Plaintiff's laundry and dropped it on the floor. Plaintiff complained that the laundry smelled strongly of feces and urine and Defendants Erkkila and Dingeldey began laughing, saying that it was just a little bit of "shit" and would wash out. Plaintiff showed the laundry to other staff and filed grievance AMF 06-09-3189-17a (Defendants' Exhibit 4 to the September 4, 2007, motion for summary judgment). Defendants offer the grievance inquiry as evidence that Plaintiff never filed a step III appeal to this grievance. Therefore, it does not appear that Plaintiff exhausted his administrative remedies regarding this claim.

Plaintiff claims that on September 21, 2006, Defendant Dingeldey told Plaintiff that he should not have complained about his laundry and should have just washed the "shit" out because they had just been "fucking around" with him. Plaintiff states that Defendant Dingeldey threatened

to come get Plaintiff from yard to see what he was all about.  Plaintiff contends that Defendants Erkkila and Huhta subsequently got him from yard, handcuffed him, and threatened to throw him on the floor.  Defendant Dingeldey told Plaintiff that if not for the cameras, he would kick Plaintiff's "ass."  Plaintiff then asked Defendant Dingeldey to take him to the day room, remove the cuffs, and fight him like a man.  Once they arrived at Plaintiff's cell, Defendant Erkkila pulled on the strap attached to Plaintiff's handcuffs, pressing Plaintiff's hand into the door slot and dislocating Plaintiff's pinkie finger, which Plaintiff relocated once uncuffed.  Defendant Erkkila stated, "All you had to do was keep your mouth shut."  Plaintiff filed a grievance on this issue, AMF 06-09-3221-26a (Defendants' Exhibit 5 to the September 4, 2007, motion for summary judgment), which lists an incident date of September 21, 2006.  The step II response was returned to Plaintiff on November 16, 2006, after Plaintiff had already filed the instant civil rights action.  Plaintiff filed a step III appeal on December 1, 2006.  (Defendants' Exhibit 5 to the September 4, 2007 motion for summary judgment.) Therefore, the undersigned concludes that Plaintiff did not properly exhaust these claims.

Plaintiff's complaint alleges that on October 2, 2006, Defendant Martti overheard him giving a fellow inmate legal advice.  Defendant Martti later denied Plaintiff his meal tray and filed a false misconduct ticket on Plaintiff for threatening behavior.  Plaintiff filed a grievance, which he attaches to his complaint (Plaintiff's Exhibit 42).  Plaintiff claims that on October 3, 2006, Defendant Martti gave Plaintiff an empty food tray, but the camera would not show that the tray was empty and would make it appear that Plaintiff received food.  Defendants state that Plaintiff's grievance has no identifier code on it, which indicates that it was never filed.  The only grievances filed in October of 2006 are AMF 06-10-3301-17a (Defendants' Exhibit 6 to the September 4, 2007 motion for summary judgment), which concerns a September 4, 2006 incident concerning Defendant Huhta, AMF 06-10-3598-03e (Defendants' Exhibit 7 to the September 4, 2007 motion for summary

judgment), which concerns conditions in Plaintiff's cell, AMF 06-10-3669-17a (Defendants' Exhibit 8 to the September 4, 2007, motion for summary judgment), which states that Officer Hill would not allow Plaintiff to attend a hearing, and AMF 06-10-3418-28a (Defendants' Exhibit 9 to the September 4, 2007, motion for summary judgment), which requested a cell move.  None of these grievances concern the alleged misconduct of Defendant Martti.  Therefore, Defendants assert that Plaintiff has failed to exhaust his claims against Defendant Martti.  In the opinion of the undersigned, Defendants are correct and Defendant Martti is entitled to summary judgment.

Plaintiff alleges that on September 21, 22, and 23, 2006, all unit officers except Hyatt wrote misconducts on Plaintiff for threatening behavior, and Plaintiff was found guilty of all the charges.  Plaintiff submitted requests for rehearings, but filed his complaint on October 23, 2006, prior to completing the exhaustion process.  On September 20, 2006, Defendant Erkkila wrote a minor misconduct for excessive noise, which was when Plaintiff called Defendant Erkkila to report his soiled laundry.  Plaintiff was found guilty of this charge and his appeal was denied (Plaintiff's Exhibit 22).  The Supreme Court has held that a claim for declaratory relief and monetary damages that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned.  *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing).  The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).  As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought

- 10 -

(damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges), *cert. denied*, 122 S. Ct. 1795 (2002). *See also Muhammad v. Close*, 540 U.S. 749 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).

In *Muhammad v. Close*, 540 U.S. 749 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004). In other words, *Edwards* still applies where a plaintiff has lost good time as the result of the misconduct conviction. Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated credits in cases. *Id.* Plaintiff does not assert that he did not forfeit good time credit for the month of his conviction. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004).

Plaintiff alleges that on September 21, 2006, he was moved to cell 3-112 on A-wing, which did not have any electrical outlets. When Plaintiff complained to Defendant McClellan, he

said he would see about getting Plaintiff moved to another cell.  However, because of the guilty finding on a minor misconduct ticket, Plaintiff was on 15 days loss of privileges (LOP).  Plaintiff claims that the minor misconduct ticket was retaliatory.  However, Plaintiff admitted to the offense (Plaintiff's Exhibits 21 and 22).  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  However, if the defendant can establish by a preponderance of the evidence that he would likely have acted as he did even in the absence of the protected conduct, the defendant is not liable.  *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).  A review of the minor misconduct appeal, which is attached as an exhibit to Plaintiff's response to the motion for summary judgment (docket #83), supports Defendants' assertion that Plaintiff pleaded guilty to the offense of excessive noise.  Therefore, because Plaintiff admittedly engaged in the misconduct he was charged with, Defendants Perttu, Huhta, Smith, Lesatz, McQuiggin and Erkkila are entitled to summary judgment on this claim.

Plaintiff contends that on October 4, 2006, Defendant Martti denied Plaintiff a shower and his dinner tray and issued him a false major misconduct ticket for threatening behavior.  Plaintiff was found guilty of the ticket.  Plaintiff requested a rehearing on the ticket on October 27, 2006, after

he had already filed the instant civil rights complaint.  Therefore, Plaintiff did not exhaust this claim.  However, as noted by Defendants, Plaintiff's appeal was denied.  Accordingly, because Plaintiff did not have his conviction overturned, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

Defendants also claim that Plaintiff's claims which involve minor misconduct convictions are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  However, Defendants are incorrect.  Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction.  *See* MICH. COMP. LAWS § 800.33.  Plaintiff would not have lost good time for minor misconduct convictions.  Therefore, these claims are not barred by *Heck*.

In their June 1, 2007, motion for summary judgment (docket #21), Defendants Perttu, Smith, and Huhta contend that they are entitled to summary judgment on Plaintiff's claims that they conspired to file numerous false misconduct reports on him.  "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action."  *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985).  In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy.  *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944.

In this case, Plaintiff alleges that Defendants came up with a plan to write false misconduct tickets on him after he filed grievance number AMF-06-03-00981-17A against Defendant Perttu on March 16, 2006.  However, the first misconduct ticket that Plaintiff claims to have received as a result of this conspiracy was filed on September 21, 2006, six months later.  Defendants state that from September 1, 2006, until October 6, 2006, Plaintiff received 11 major misconducts for threatening behavior, but only one of these was written by any of the allege members of the conspiracy, namely Defendant Huhta.  Defendants state that on September 22, 2006,

- 13 -

Defendant Huhta asked Plaintiff to stop kicking his cell door, and that Plaintiff responded by stating "move the fuck on, first chance I get I'm going to kill one of you motherfuckers." Plaintiff was found guilty of all the tickets, including the ticket written by Defendant Huhta. As noted above, claims which necessarily imply the invalidity of the misconduct tickets, such as a claim that they were false and motivated by a conspiracy, are barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). Therefore, Plaintiff's claim that the misconduct tickets were motivated by a conspiracy to retaliate against him are barred by *Heck*.

In addition, as contended by Defendants Perttu, Smith and Huhta, LeSatz and McQuiggin, Plaintiff's claims that they subjected him to false major misconduct tickets from March 16, 2006, until September 22, 2006, are also properly dismissed because he was found guilty of the misconduct tickets. For the reasons set forth above, these claims are barred by the by *Heck v. Humphrey*.

Defendants Perttu, Smith, and Huhta, McQuiggin and Lesatz contend that they are entitled to summary judgment on Plaintiff's claim that they deprived him of access to the courts. Plaintiff claims that these defendants failed to process his legal mail and/or provide him with legal supplies at various times. Plaintiff also claims that Defendant Perttu failed to make requested copies and that he was denied access to the mini law library or typing room.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such

as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993). As noted by Defendants Perttu, Smith, and Huhta, McQuiggin and Lesatz in their April 2, 2007, motion for summary judgment, Plaintiff in this case has failed to allege facts showing that he suffered an actual injury to a pending or contemplated action as a result of the alleged misconduct. Therefore, Defendants Perttu, Smith, and Huhta, McQuiggin and Lesatz are entitled to summary judgment on Plaintiff's access to courts claims.

Defendants Perttu, Smith, McQuiggin, and Lesatz state that they are entitled to summary judgment on Plaintiff's claims regarding the condition of cell 3-112 in A-wing, to which Plaintiff was moved on September 21, 2006. According to the complaint, the cell was not equipped

with electrical outlets, and the floors and walls were smeared with feces, blood and urine.  Plaintiff claims that he was denied cleaning supplies on a weekly basis, and that he advised Defendant Perttu of the condition of his cell on October 2, 2006.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Defendants offer the affidavits of Defendants Perttu and Smith, in which they attest that they checked the "Special Housing Unit Records (CAJ-278)," which showed that Plaintiff had participated in cell cleaning on September 25, 2006, and October 23, 2006, and had refused cleaning supplies on October 9, 2006.  In addition, they attest that the cell did not have feces, blood or urine smeared on the floors or walls.  (*See* Defendants' Exhibits 2 and 4 to the April 2, 2007, motion for summary judgment.)  Allegations about temporary inconveniences, e..g, being deprived of a lower bunk, subjected to a flooded cell, deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilize measure of life's necessities as measured by a contemporary

standard of decency. *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001).

Because the Special Housing Unit Records show that Plaintiff cleaned his cell on September 25,

2006, the undersigned concludes that Defendants Perttu, Smith, McQuiggin, and Lesatz are entitled

to summary judgment on this claim.

Defendants McQuiggin and Lesatz contend that Plaintiff's claims against them are

based solely on their conduct in signing off on documents relating to grievances, misconduct reports,

and requests for administrative segregation continuances. Liability under Section 1983 must be

based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-

26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus,

Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*,

436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a

showing that the party personally participated in, or otherwise authorized, approved or knowingly

acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d

1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874

(6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th

Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if

plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and

that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891

F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a

supervisor to supervise, control or train the offending employee is not actionable absent a showing

that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some

other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim

requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants McQuiggin and Lesatz were personally involved in the activity which forms the basis of his claim.  Defendants McQuiggin and Lesatz only roles in this action involve the denial of administrative grievances or the failure to act.  Defendants McQuiggin and Lesatz cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000).  Accordingly, the Court concludes that Defendants McQuiggin and Lesatz are entitled to summary judgment in this action for lack of personal involvement.

Finally, Defendants Perttu, Smith, and Huhta, McQuiggin and Lesatz claim that they are entitled to qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This

would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action

to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Because it does not appear that there is a genuine issue of material fact regarding Plaintiff's claims against Defendants Perttu, Smith, and Huhta, McQuiggin and Lesatz, the undersigned recommends that they be granted qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff succeeded in sustaining his burden of proof in response to Defendants' request for summary judgment with regard to his claim that Defendant Holma retaliated against him by issuing him a major misconduct ticket on August 21, 2006. However, Defendants have shown that they are entitled to summary judgment on Plaintiff's remaining claims.

Accordingly, it is recommended that Defendants' April 2, 2007, motion for summary judgment (docket #21) be granted, dismissing Defendants Perttu, Smith, Huhta, McQuiggin and Lesatz with prejudice.

It is further recommended that Defendants' September 4, 2007, motion for summary judgment (docket #75) be denied as to the allegedly retaliatory misconduct ticket by Defendant Holma on August 21, 2006, and granted pursuant to the exhaustion requirement with regard to Plaintiff's claim against Defendants Dingeldey for retaliation on August 24, 2006, his claim against Defendant Holma for retaliation on September 15, 2006, his claim against Defendant Erkkila for retaliatory conduct on September 20, 2006, his claim against Defendants Dingeldey, Erkkila, and Huhta for an alleged assault on September 21, 2006, and his claim against Defendant Martti for engaging in retaliatory conduct on October 2, 2006.  Defendants' motion for summary judgment (docket #75) is also properly granted pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), with regard to Plaintiff's claims of major misconduct tickets on September 21, 22, and 23, 2006, and October 4, 2006.  Finally, Defendants' motion for summary judgment (docket #75) is properly granted on the merits with regard to Plaintiff's claim that Defendant McClellan wrote a retaliatory minor misconduct ticket on him on September 21, 2006.  Accordingly, if the court adopts this report and recommendation, Defendants Perry, VanAbel, Martti, McClellan, Erkkila and Dingeldey are properly dismissed from this action.

Finally, the undersigned recommends that Plaintiff's motion to be transferred to a new facility (docket #73) be denied because there is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any choice concerning the facility where he will be incarcerated.  *Meachum v. Fano*, 427 U.S. 215 (1976); *Olim v. Wakinekona*, 461 U.S. 238 (1983).

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley                                  
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 13, 2008